UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOSHUA BOWEN, | Case No. 1:17-cv-807 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Joshua Bowen filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Supplemental Security Income in April 2014, ultimately alleging disability beginning in January 2014 due to physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On August 5, 2016, ALJ Kristen King held an evidentiary hearing at which Plaintiff appeared with a non-attorney representative Jason Mauch. The ALJ also heard testimony from impartial vocational expert Connie O'Brien-Heckler. On November 26, 2016, the ALJ denied Plaintiff's application in a written decision. (Tr. 43-54).

1

Plaintiff was 30 years old at the time of the administrative hearing. (Tr. 63). He has past relevant work as a short order cook, stocker, cashier and janitor. (Tr. 52). He alleges disability based primarily on mental impairments, including bipolar disorder, anxiety, depression and personality disorder.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder, depression, anxiety, personality disorder, and substance abuse." (Tr. 45). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform medium work as follows:

> He should avoid all exposure to unprotected heights and all use of dangerous machinery. He can never climb ladders, ropes, or scaffolds. He is limited to simple, routine tasks. He is able to perform goal orientated work, but no constant production rate pace work, such as an automated assembly line. He is limited to jobs in which changes occur no more than approximately 10% of the workday. He is able to understand, remember, and carry out simple instructions, but he would be unable to perform work that would require directing others or planning goals. He can interact with the public no more than approximately 10% of the workday, but no transactional interaction such as sales or negotiations. He can only occasionally interaction with coworkers and supervisors, but with no tandem tasks.

(Tr. 47). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform his past relevant work a janitor. (Tr. 52). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Regulations and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating the medical evidence of record; and 2) failing to accommodate Plaintiff's moderate limitations in concentration, persistence or pace. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

4

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## B. Specific Errors

### 1. Evaluation of Opinion evidence

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence. Specifically, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, especially the opinion of consultative psychologist, Twehues, Psy.D, and not adopting all of the limitations stated by the state reviewing psychologist, Bruce Goldsmith, Ph.D. Plaintiff's assertions are unavailing.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). Upon careful review and as explained below, the undersigned finds, that the ALJ's evaluation of the opinion evidence comports with Agency regulations and controlling law.

Here, in formulating Plaintiff's mental RFC, the ALJ gave some weight to the findings of Bruce Goldsmith, Ph. D. Notably, on November 10, 2014, Dr. Goldsmith completed a Psychiatric Review Technique and mental RFC on behalf of the State agency, where in he opined that Plaintiff had mild to moderate mental limitation with one

5

or two episodes of decompensation. (Tr. 50). Specifically, he opined that Plaintiff retained the capacity to perform routine 1-4 step tasks in a controlled environment; with no fast-paced production demands; superficial contact with coworkers and supervisors; minimal contact with the general public; and routine and infrequent changes. (Tr. 50). The ALJ, however, explained that she did not adopt all of Dr. Goldsmith's opinion of limitation, and stated that, while she agreed "generally" with the paragraph B criteria ratings he assigned, she reached "somewhat different functional limitations given the record as a whole, including the claimant's testimony and subsequent examination findings" (Tr. 50).

The ALJ also assigned limited weight to the findings of Jessica Twehues, Psy.D., who completed consultative psychological evaluation on July 29, 2014. (Tr. 48-49). Dr. Twehues opined that Plaintiff had intellectual abilities in the low average range. (Tr. 345-350). She concluded that Plaintiff could understand, remember, and follow simple instructions, would likely have difficulty sustaining focus for prolonged periods of time, would likely have slowed work pace, would have difficulty interacting with the public and would likely present as easily agitated, would likely withdraw from others and interact on a very limited basis, and would have difficulty tolerating stress. (Tr. 349-350). The ALJ determined that Dr. Twehues findings were inconsistent with Plaintiff's self-reports of functioning. In this regard, the ALJ noted that in June 2014, one month before Twehues' examination, Plaintiff himself reported caring for his son, performing some household chores, shopping, and preparing simple meals, as well as managing personal care and handling his finances (savings account, pay bills, count change). (Tr. 50, 269-272). He also reported going shopping on a monthly basis. (Tr. 47, 271). The ALJ further noted

that Dr. Twehues' opinion was not consistent with other record evidence. (Tr. 51). The ALJ noted that in September 2014, Plaintiff appeared oriented, with logical, linear, and goal-directed thought process. (Tr. 51, 354). Plaintiff did not endorse delusional thought or hallucinations and had adequate insight and judgment as well as good recent and remote memory. (Tr. 51, 354, 388, 408, 413-14).

Plaintiff argues that the ALJ assigned inadequate weight to Dr. Twehues's opinion, when the state reviewing psychological consultants gave her opinion great weight. However, as noted by the Commissioner, the ALJ explained that she only gave some or partial weight to the state reviewing psychological consultants' opinions, and adequately explained why she did not adopt their opinions in their entirety. (Tr. 50). As noted above, the ALJ determined that Dr. Twehues limitations were not consistent with Plaintiff's self-reports of functioning and were also inconsistent with other opinion evidence. In light of the foregoing, the undersigned finds, the ALJ properly weighted Dr. Tweheus' findings. *See* 20 C.F.R. 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Plaintiff further argues that the ALJ erred in only assigning some weight to Dr. Goldsmith's opinion, and specifically, argues that the ALJ erred in not adopting all of his opinion of limitations, including the need for a controlled environment and only superficial contact with coworkers and supervisors, with minimal contact with the general public. (Tr. 130). The ALJ, however, properly determined that some portions of Dr. Goldsmith's findings were not entitled to deference. Namely, the ALJ cited to 2015 progress notes indicating average eye contact, logical thought process, clear speech, and denied hallucinations or delusions. (Tr. 49, 478). Normal findings were again reported in October

7

2015, when Plaintiff was noted to be pleasant, with organized thought process, intact perception, full and euthymic affect, and good insight and judgment, and reported improved mood and sleep. (Tr. 49, 487).

An ALJ is required to do precisely as the ALJ did here—to determine an RFC based upon the medical evidence as a whole. In fact, the ALJ alone is responsible for determining a Plaintiff's RFC. *See* 20 C.F.R. § 404.1546(d). There is no regulatory requirement that an ALJ adopt every facet of a particular opinion in formulating an RFC, so long as the record supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review. As such, an ALJ is "not required to recite the medical opinion of a physician verbatim in [her] RFC. *See Poe v. Com'r of Soc. Sec.*, 342 Fed.Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009); see also *Smith v. Colvin*, 2013 WL 6504681, at *11 (N.D. Ohio, Dec. 11, 2013) ("[T]here is no requirement that an ALJ accept every facet of an opinion to which he assigns significant or substantial weight."); *Smith v. Com'r of Soc. Sec.*, 2013 WL 1150133 at *11 (N.D. Ohio, Mar. 19, 2013) (same).

Moreover, the fact that the RFC differed slightly from these opinions does not show error because it was the ALJ's role—not the psychologists'—to assess Plaintiff's RFC. See 20 C.F.R. §§ 404.1546(c), 416.946(c) (the final responsibility for crafting an RFC is reserved to the Commissioner); *see also Roy v. Apfel*, 23 Fed.Appx. 389, 390 (6th Cir. 2001) ("[T]he ALJ did not impermissibly substitute his own opinion for that of the doctors because the ALJ was speaking about residual functional capacity, an area where the ALJ makes the legal decision."); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.").

For these reasons, the ALJ's decision is substantially supported in this regard and should not be disturbed.

*2. Concentration, Persistence or Pace*

Plaintiff next argues that the ALJ's RFC finding did not address Plaintiff's moderate limitations in concentration, persistence, or pace, and that this resulted from an inadequate RFC finding.

Plaintiff argues that the record consistently documents his mental impairments and limitations, including: poor sleep; anhedonia; decreased energy; poor attention/concentration; hopelessness; constricted affect; withdrawal; self-harm; suicidal ideations; racing thoughts; and chronic irritability. PageID No. 346; 381; 405; 474; 480-481; 499; 513; 523; 570-571; 574; 582. Plaintiff argues such findings significantly limit Mr. Bowen's ability to perform work on a sustained basis. Plaintiff's argument is misplaced. It is well established that a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment).

Moreover, as noted above, the ALJ properly considered all the evidence related to the limitations caused by Plaintiff's impairments and reasonably determined that Plaintiff could perform simple, routine tasks, as well as goal-oriented work without constant production rate pace work, such as automated assembly line, and limited him to jobs in which changes occur no more than approximately 10% of the workday (Tr. 47). The ALJ additionally included limitations to understanding, remembering, and carrying out simple instructions, without directing others or planning goals. (Tr. 47). Such findings are

9

substantially supported by the evidence of record. Notably, state reviewing physician Dr. Goldsmith similarly opined that Plaintiff should have no fast-paced production demands, and he did not state any additional restrictions. (Tr. 130). Dr. Twehues also opined that he could handle simple instructions but would have slowed work pace (Tr. 350). In light of the forgoing, the undersigned finds that substantial evidence supports the Commissioner's decision and the decision should be affirmed in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JOSHUA BOWEN,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:17-cv-807

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).